**Mark A. ARAGON, Plaintiff–Appellant,**

v.

**REPUBLIC SILVER STATE DISPOSAL, INC., Defendant–Appellee.**

No. 01–15951.

United States Court of Appeals, Ninth Circuit.

Submitted April 12, 2002.*

Filed June 5, 2002.

As Amended on Denial of Rehearing and Rehearing En Banc July 18, 2002.**

---

* This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** Judge O'Scannlain and Judge Tallman have voted to deny the petition for rehearing en banc, and Judge King so recommends.

Richard Segerblom, Las Vegas, NV, for the plaintiff-appellant.

Patrick H. Hicks, Bruce C. Young, Hicks & Walt, Las Vegas, NV, for the defendant-appellee.

Before: O'SCANNLAIN, TALLMAN, Circuit Judges, and KING, District

Judge.**

O'SCANNLAIN, Circuit Judge.

In this employment discrimination case, we must decide whether an employee was fired because of his race or because of poor job performance.

I

On September 21, 1998, Mark A. Aragon, a white male, began working as a casual "pitcher" for Republic Silver State Disposal, Inc. ("Republic"). The pitcher position is a physically strenuous job that requires individuals to lift and to carry trash receptacles to a waiting garbage truck. As a casual employee, Aragon was required to report to work at 3:00 a.m., although pursuant to the Union's collective bargaining agreement, casuals are not guaranteed work every night. Instead, they are assigned on an "as needed" basis. The agreement also provides that casual employees have no right to continued employment; they are assigned by the Union Hall to Republic for temporary work assignments only. The purpose of the casual position is to provide a sufficient labor force in case there are not enough "regular" employees to cover a workload on a given day and to help Republic identify individuals who have the ability to obtain "regular" employment. Republic maintains a pool of about 50 casual employees.

Aragon worked nine shifts before he was laid off on October 30, 1998. On that night, Republic's Foreman, Daryl McLemore, who is African American, sent four casuals, including Aragon, back to Union Hall, *i.e.*, he laid them off. Aragon stated that about 40 to 50 casual pitchers were waiting to learn if they would be needed to work that night, and McLemore began telling certain pitchers to go home and come back the next day. Aragon asserts that the pitchers McLemore told to come back the next day were all African American. Then, he claims, McLemore told the remaining ten casuals, who were all white or white-looking, that they were no longer needed and should return to Union Hall.[1] McLemore told them that they could check back in December to see about being rehired.

While asserting that ten white (or white-looking) pitchers were singled out that night, Aragon could remember only the names of three other individuals: John Ream, Dushon Green, and Scott Elrod. Elrod, who is white, was not in fact laid off, and is now a regular employee with Republic. Furthermore, Republic produced evidence that there were only four casuals, including Aragon, who were laid off,[2] one of whom is African American: Tony Coppedge (white), John Ream (white), and Dushon Green (African American). Aragon asserts that Green looks white, however. Both Coppedge and Ream checked back with Republic at a later date and were rehired. Neither Aragon nor Green checked back for rehire.

Republic told Aragon and the others laid off that night that a reduction in workforce was necessary because of a seasonal down-

---

** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. In addition to his own statement, Aragon presented the declaration of Steve Wilson, an African American casual who was told to return the next day. Wilson states that McLemore told the African American casuals to go home, and when he left the area there were approximately ten white males remaining.

2. This documentation corresponds with McLemore's recollection that there were four or five casuals sent back to Union Hall that night.

turn in trash volume.[3] However, each received an identical letter stating:

> It is the decision of his supervisors that he has not shown the requisite capabilities that would warrant his continued employment. The company does not feel he merits being made a regular employee and therefore will terminate him from his position of employment.

McLemore stated that he did not mention Aragon's or anyone else's performance as the reason for being laid off because he did not want to embarrass anyone in front of their co-workers.

Aragon's job performance had been an issue, however. McLemore, and the other Republic Foreman, Calvin Francis, received immediate complaints from drivers about Aragon's performance; he was working too slowly. Both of the foremen told Aragon that he needed to improve and to work faster if he wanted to stay employed. McLemore personally observed Aragon on two or three occasions and determined that he had difficulty maintaining the pace necessary to get through the route on time. One night, Aragon stopped working during his shift, saying "put a fork in me, I'm done." Aragon explains that he stopped working because he injured his back.

After being laid off, Aragon filed a racial discrimination complaint with the Nevada Equal Rights Commission ("NERC") and Equal Employment Opportunity Commission, alleging that he was laid off because he is white. After receiving a right to sue letter, he brought suit in federal district court. Republic moved for summary judgment, which the district court granted, finding that Aragon failed to make out a prima facie case of race discrimination. This timely appeal followed.

## II

Aragon argues that Republic terminated him because of his race. Under Title VII, an employer may not "discriminate against an individual with respect to his ... terms, conditions, or privileges of employment" because of his race. 42 U.S.C. § 2000e–2(a). This provision makes "disparate treatment" based on race a violation of federal law.

■ The proper legal framework for determining whether Aragon's claim should survive summary judgment is the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, Aragon must first establish a prima facie case of racial discrimination. *Id.* at 802, 93 S.Ct. 1817. In particular, he must show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) similarly situated non-white individuals were treated more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ If Aragon succeeds in establishing a prima facie case, the burden of production shifts to Republic to articulate a legitimate, nondiscriminatory reason for terminating Aragon's employment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If Republic does so, Aragon must demonstrate that Republic's articulated reason is a pretext for unlawful discrimination by " 'either directly persuading the court that a discriminatory reason more likely motivated the employer or in-

---

**3.** Republic encounters seasonal drop-offs in trash volume, which affects the staffing needs of the casual pool. A seasonal drop-off nor-mally occurs between the end of October until the end of December, when trash volume picks up again due to the holiday season.

directly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1124 (9th Cir.2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). However, Aragon's evidence must be both *specific and substantial* to overcome the legitimate reasons put forth by Republic. *E.g., Bergene v. Salt River Project Improvement & Power Dist.,* 272 F.3d 1136, 1143 (9th Cir.2001); *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998); *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996).

■ If Aragon demonstrates pretext, then the burden-shifting framework disappears, and the only remaining issue is "'discrimination vel non.'" *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). While the burden of production may shift, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

## A

The district court found that Aragon failed to establish a prima facie case of racial discrimination because he failed to demonstrate that he was qualified for his position. Because our review of the district court is de novo, *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997), we consider the four requirements of a prima facie case. As a general matter, however, it is important to remember that "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary judgment is *minimal* and does not even need

to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994) (citation omitted) (emphasis added); *see also Sischo–Nownejad v. Merced Cmty. College Dist.,* 934 F.2d 1104, 1110–11 (9th Cir. 1991) ("[T]he amount[of evidence] that must be produced in order to create a prima facie case is very little.") (quotation marks omitted).

■ First, Aragon, despite being white, is a member of a protected class. It is well-established that Title VII applies to any racial group, whether minority or majority. *E.g., McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 278–79, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

■ Second, Aragon must show that he was qualified for his position as a casual pitcher. The district court found that Aragon's evidence on this point fell short of that necessary to establish a prima facie case—namely, Aragon "failed to show that he was doing his job well enough to eliminate the possibility that he was laid off for inadequate job performance." *Aragon v. Republic Silver State Disposal, Inc.,* No. CV–S–99–1461–PMP(LRL) (D. Nev. April 12, 2001). The district court's analysis seems to conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing Aragon must make at the third stage of the *McDonnell Douglas* inquiry to demonstrate that Republic's reasons for laying him off were pretextual.

Here, Argon presented evidence that there were no formal write-ups for poor performance or disciplinary notices against him. He asserted that his performance was equal to his coworkers and that his trucks brought in an average amount of garbage by weight. He also presented a Notice of Injury, signed by a Republic supervisor, as evidence of why he stopped

working early during one of his shifts. Finally, when he was laid off, McLemore told Aragon that he could check back in December to see about being rehired, which, Argon argues, demonstrates that his performance was satisfactory.

We have held that an employee's own statement that he was performing at a level equal to that of other employees is not enough to raise a genuine issue of material fact. *Bradley*, 104 F.3d at 270 ("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."). However, this holding did not pertain to the minimal showing needed to establish a prima facie case; rather, it spoke to the employee's lack of specific and substantial evidence showing that the employer's reasons for terminating him were false or discriminatory. *Id.* Because we are still at the prima facie stage, Aragon's self-assessment of his performance is relevant, and, in any case, it is not the only evidence he presented. We are satisfied that Aragon has met his minimal prima facie burden of establishing that he was qualified for the casual pitcher position.

▮ Third, being laid off from one's position certainly constitutes an adverse employment action. *E.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir.2000).

▮ Fourth, Aragon must present evidence that similarly situated non-white individuals were treated more favorably. In the context of a lay-off, Aragon need not show that he was replaced by a member of a different race; rather, he must show that his lay off " 'occurred under circumstances giving rise to an inference of discrimination.' " *Coleman*, 232 F.3d at 1281 (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990)). Aragon can establish this inference "by showing the employer had a continuing need for [his] skills and services in that [his] various duties were still being performed, or by showing that others not in [his] protected class were treated more favorably." *Id.* (citation and quotation marks omitted); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d Cir.2001) (explaining minimal showing necessary to establish co-workers were similarly situated).

The district court thought that this was a close question, but ultimately found that Aragon put forth sufficient evidence to meet his minimal prima facie burden. Wilson's and Aragon's declarations, *supra* n. 1, assert that only white or white-looking casuals were laid off, while non-white casuals remained employed to perform the same duties as Aragon's. We agree with the district court that this constitutes enough evidence to clear the minimal prima facie bar.

Because Aragon presented enough evidence to establish a prima facie case of racial discrimination, the district court erred by granting summary judgment to Republic at the prima facie stage of the burden-shifting analysis.

### B

▮ Our analysis now continues to the second *McDonnell Douglas* stage—namely, Republic must assert a legitimate, nondiscriminatory reason for laying off Aragon. Republic asserted two such reasons: a seasonal downturn in trash volume and Aragon's poor job performance. As discussed above, Republic traditionally experiences a decrease in trash volume between October and December, with business picking up again around the winter holidays. Indeed, McLemore recommended that the individuals who were laid off check back with Republic around the holidays to see about being rehired. Because of the downturn in volume, Re-

public needed fewer casual pitchers, which, in turn, meant reducing its workforce.

Second, Aragon's job performance was less than stellar. Slow pickup of trash results in unnecessary overtime pay to both the garbage truck driver and pitcher, which is a situation Republic would obviously like to avoid. McLemore and Francis received immediate complaints from drivers that Aragon's slow pace made it difficult to complete their routes on time. McLemore even observed Aragon on the job and concluded that he was having trouble adapting to his position and was working too slowly; Aragon admits that McLemore warned him that he was "too slow" and that he needed to "hustle up" to prove he could handle the job. Also, during one of his shifts, Aragon stopped working, saying "put a fork in me, I'm done."

These two reasons—the seasonal downturn in trash volume and Aragon's poor job performance—led to his lay off, Republic asserts. Both constitute a legitimate, nondiscriminatory reason for terminating Aragon's employment with Republic. *See Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1295 (9th Cir.2001) (holding that a reduction in force constituted a legitimate, nondiscriminatory reason for terminating employee).

### C

Because Republic met its burden of proffering legitimate reasons for laying off Aragon, the burden now shifts back to Aragon to put forth *specific* and *substantial* evidence that Republic's reasons are really a pretext for racial discrimination. Aragon asserts three arguments to demonstrate the pretextual nature of Republic's justifications: (1) Republic gave two inconsistent reasons for laying him off, (2) the white and white-looking casuals laid off

had more seniority than the non-white casuals Republic retained, and (3) non-whites were treated more favorably than whites.

■■■ First, Aragon argues that Republic's two reasons for laying him off—seasonal downturn and poor performance—are inconsistent. In particular, Gerald Benford, Republic's Director of Labor Relations, told NERC that his company sent Aragon back to Union Hall because of his job performance—not race, while Craig Laub, Republic's Personnel Director, stated in his declaration that the need to lay off casuals was created by seasonal downturn. "[F]undamentally different justifications for an employer's action ... give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir.1994).

■■■ Republic's reasons are not inconsistent, however. The seasonal downturn in trash volume explains why it was necessary to return a certain number of casuals to Union Hall. Aragon offers no evidence to doubt the veracity of Republic's assertion that it was experiencing its traditional downturn. In deciding *which* casuals to lay off, Republic considered job performance—the second reason Republic gave for choosing to lay off Aragon and the others. Indeed, each of the four casual pitchers laid off that night received letters that indicated a problem with their work abilities. We do not infer pretext from the simple fact that Republic had two different, although consistent, reasons for laying off Aragon. *E.g., Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir.2002) (upholding grant of summary judgment to employer when employee was fired for two different, but consistent, reasons); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir.2001) (finding no

pretext when the employer's reasons for termination were neither inconsistent nor conflicting); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.1997) (holding that different justifications for an adverse action is not sufficient to defeat summary judgment when those reasons are "not incompatible").

Second, Aragon argues that we should infer pretext from the fact that the white and white-looking casual pitchers laid off had more seniority than the non-white casuals Republic retained. This is factually untrue for two reasons. Green began working as a casual on May 8, 1998; Ream on June 20; Aragon on September 21; and Coppedge on September 30. Thus, the most senior casual pitcher laid off that night, Green, is African American. Aragon asserts that Green appears white, but McLemore knew that Green was African American and sent him back to Union Hall because of his performance. In contrast, Elrod, a white casual pitcher who was not laid off, had started working with Republic on September 16. When the most senior casual pitcher laid off is African American, and a junior white casual is retained, it is inaccurate to assert that whites with more seniority were treated unfairly.

. Furthermore, under the terms of their collective bargaining agreement, casuals do not accrue any seniority until they reach 90 days of employment with Republic.[4] Because Aragon worked only 39 days before he was laid off, he had no seniority whatsoever. Therefore, if there were Afri-can American casuals who were hired after Aragon and retained their job, they were not less senior than he was. We decline to infer pretext from these facts.

Finally, Aragon asserts that the fact that non-whites were treated more favorably than whites constitutes *direct* evidence of discrimination. This argument seems to confuse the difference between "direct" and "circumstantial" evidence of discrimination.[5] Direct evidence "is evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption.*" *Godwin*, 150 F.3d at 1221 (quotation marks omitted) (alteration in original) (emphasis added); *see also Bergene*, 272 F.3d at 1141. Racist or sexist statements constitute such "direct evidence" of discrimination. *Godwin*, 150 F.3d at 1221 (decision-maker who denied plaintiff a position said that he "did not want to deal with another female;" at meeting, a male co-worker gave woman who was presenting a "Barbie Doll Kit" containing two dildos and a bottle of Wesson oil); *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir.1997) (employer referred to a Mexican–American employee as a "dumb Mexican"); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir.1991) (employer stated that female candidates get "nervous" and "easily upset"); *Sischo-Nownejad*, 934 F.2d at 1111 (employer referred to plaintiff as an "old warhorse" and to her students as "little old ladies"). Particularly because employers now know better, direct evidence of employment discrimination is rare. *See Davis v. Chevron,*

---

**4.** The collective bargaining agreement provides that casuals "will have no seniority." Furthermore, casual employees "shall not be subject to the grievance provisions ... and shall not have recourse because of disciplinary action, layoffs, or termination during this status."

**5.** If a plaintiff presents direct evidence of discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221; *see generally Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085–87 (5th Cir.1994) (explaining distinction between direct and circumstantial means to establish employment discrimination).

*U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994).

Aragon does not allege that he or his white co-workers were subjected to racial comments; rather, he simply asserts that three of the four individuals laid off were white. However, believing that fact, does not, by itself, lead us to the conclusion that Republic discriminated on the basis of race. *See Coleman,* 232 F.3d at 1285 (finding the fact that younger individuals were hired for a position does not establish age discrimination because there were other factors contributing to the decision). Rather, we would have to *infer* from Aragon's evidence that race played an invidious role in the decision to lay him off.

 Thus, the fact that three of the four casuals singled out for lay off that night were white could constitute *circumstantial* evidence of discrimination demonstrating pretext. *See id.; cf. Bergene,* 272 F.3d at 1143 (finding the fact that there were no female supervisors to constitute circumstantial evidence of gender discrimination). Yet, because the sample size is so small, we decline to give it much weight. In *Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072 (9th Cir.1986), to show pretext, an employee relied on the fact that four of the five employees laid off (out of 28 total employees) were African American. We recognized that while "sta-

tistics have a place in disparate treatment cases, their utility 'depends on all of the surrounding facts and circumstances.'" *Id.* at 1075 (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (citation omitted). We declined to consider the employee's statistical evidence because "'statistical evidence derived from an extremely small universe' ... 'has little predictive value and must be disregarded.'" *Id.* at 1076 (quoting *Harper v. Trans World Airlines, Inc.,* 525 F.2d 409, 412 (8th Cir.1975)); *see also LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 848–49 (1st Cir. 1993).[6] The problem with a small number, of course, is that slight changes in the data can drastically alter the result. *Sengupta,* 804 F.2d at 1076.

We encounter a similar problem with the small sample size here. Furthermore, the statistics "'must show a stark pattern of discrimination unexplainable on grounds other than [race].'" *Coleman,* 232 F.3d at 1283 (quoting *Rose,* 902 F.2d at 1421). Aragon's statistical evidence presents no stark pattern, nor does it account for possible nondiscriminatory variables, such as job performance. Thus, we find that Aragon's statistics, which "stand precariously unsupported by other probative evidence of [race] discrimination," *LeBlanc,* 6 F.3d at 848, fall short of constituting substantial

---

**6.** As the First Circuit noted, in disparate treatment cases, the central focus is less whether a pattern of discrimination existed [at the company] and more how a particular *individual* was treated and why. As such, statistical evidence of a company's general hiring patterns, although relevant, carries less probative weight than it does in a disparate impact case. In this context, statistical evidence in a disparate treatment case, in and of itself, rare-

ly suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual.

*LeBlanc,* 6 F.3d at 848 (quotation marks omitted) (citations omitted).

and specific evidence of racial discrimination.

Aragon has not presented the substantial and specific evidence required to demonstrate that Republic's reasons for the lay off were a pretext for racial discrimination. As such, he has failed to carry his burden at the third stage of the *McDonnell Douglas* framework.

### III

While the district court erred by granting summary judgment to Republic based on Aragon's failure to establish a prima facie case of racial discrimination, we nevertheless affirm because Aragon cannot demonstrate that Republic's legitimate, nondiscriminatory reasons for terminating him were a pretext for illegal discrimination.

**AFFIRMED.**