**Rafael METZGER, Plaintiff—
Appellant,**

v.

**Mel MARTINEZ,* Secretary of the Dept. of Housing and Urban Development Defendants—Appellees.**

No. 01–36011.

D.C. No. CV–00–00624–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2002.

Decided Oct. 10, 2002.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

* Mel Martinez is substituted for his predecessor, Andrew Cuomo, as Secretary of Housing

and Urban Development.   Fed.  R.App.  P.      43(c)(2).

Before HILL,** GOULD, and BERZON, Circuit Judges.

### MEMORANDUM ***

Rafael Metzger, a Hispanic male and former employee of the Department of Housing and Urban Development ("HUD"), appeals the district court's order granting HUD's motion for summary judgment. Metzger claims that HUD discriminated against him on the bases of color and national origin and in retaliation for his participation in EEO counseling activity, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"). Based on our *de novo* review of the record, *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir.2002), we affirm in part, reverse in part, and remand for pro-

ceedings consistent with this opinion. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. In a color or national origin discrimination claim relying on circumstantial evidence, a summary judgment motion is evaluated under the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Metzger must first establish a *prima facie* case of discrimination. *Aragon*, 292 F.3d at 658. He has done so.

To establish a *prima facie* case of discrimination, Metzger must establish that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he was subject to an adverse employment action, and (4) other employees with similar qualifications were treated more favorably, or the evidence otherwise creates an inference of discrimination. *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *Aragon* 292 F.3d at 658, 660 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir.2000)). At the *prima facie* stage, the requisite degree of proof is "minimal." *Aragon*, 292 F.3d at 659 (emphasis omitted).

HUD concedes that Metzger is a member of a protected class and that Metzger's demotion and directed reassignment from Spokane, Washington to Anchorage, Alaska were adverse employment actions. Viewing the evidence in the light most favorable to Metzger, as summary judgment requires, *Godwin*, 150 F.3d at 1220, we agree with the district court's conclusion that Metzger produced enough evidence to establish his qualifications, in-

---

** The Honorable James C. Hill, Senior United States Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

cluding: (1) evidence of a successful, 25–year career with HUD, culminating in Metzger's promotion to Senior Community Builder in 1998; (2) testimony from Metzger's secretary indicating that Metzger was a "workaholic" who was successfully contacting members of the Spokane community in accordance with his job duties; (3) a "fully successful" performance appraisal in March 1999; (4) letters from constituents, including the Mayor of Spokane, praising his work; and (5) an award from HUD Headquarters in Washington D.C. for his work on a Spanish Language Resource Guide.

▇▇▇ Metzger also demonstrated that other similarly qualified individuals were not subject to the same adverse employment actions. Other Senior Community Builders were neither demoted nor forced to relocate against their wishes. The district court concluded that, because HUD alleged various deficiencies in Metzger's performance, Metzger could not compare himself to other Senior Community Builders who did not have the identical performance deficiencies. This analysis assumes that HUD's allegations are true and not pretextual, an assumption which improperly conflates the first and third stages of the *McDonnell Douglas* inquiry. *See Aragon*, 292 F.3d at 659 (stating that, at the *prima facie* stage, the employee need not "eliminate the possibility that he was laid off for inadequate job performance"—to so require would "conflate the minimal inference needed to establish a *prima facie* case with the specific, substantial showing [the employee] must make at the third stage of the *McDonnell Douglas* inquiry to demonstrate that [the employer's] reasons for laying him off were pretextual.") (internal quotation marks and citations omitted). Because a fact-finder could conclude that Metzger was qualified for the Senior Community Builder position and suffered an adverse employment event that other Senior Community Builders did not, Metzger established a *prima facie* case.

▇▇ 2. Because Metzger established a *prima facie* case, HUD was required to justify its conduct. *Aragon*, 292 F.3d at 658. Metzger's alleged performance deficiencies, if true and not pretextual, would justify the adverse employment actions. Thus, the burden shifts back to Metzger to demonstrate that HUD's stated reasons are pretextual. *Id.* at 658–659. Viewing Metzger's evidence cumulatively, *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir.2000), and drawing reasonable inferences in favor of Metzger, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), we conclude that, although the issue is close, Metzger produced enough specific circumstantial evidence of pretext to survive summary judgment.

First, Metzger points to the timing of events: Metzger had a 25–year history of positive performance reviews and awards. He was the only Hispanic Senior Community Builder in the Northwest HUD region from the time he arrived and was accused of performance deficiencies soon after his arrival.

Second, Metzger introduced evidence, such as the testimony of Metzger and his secretary Judy Anderson, as well as a letter written by the Mayor of Spokane, which disputes the truth of several of the alleged performance deficiencies, thereby creating a genuine factual issue regarding their validity.

Third, Metzger presented comparative evidence sufficient for a jury to conclude that he was disciplined for his participation in an alleged "shouting match" although the co-participant in the shouting match, non-Hispanic coworker Laura Cole, was not disciplined.

Fourth, a jury could infer from Metzger's evidence that Metzger's supervisors Bob Santos and Lynn Stowell failed to support Metzger's attempts to serve the Hispanic community in Spokane, Washington by, for example, refusing to reimburse Metzger for his effort to develop a Spanish Language Resource Guide which eventually won a HUD "best practice" award. The HUD supervisors also refused Metzger's proposal to develop a dedicated monolingual Spanish telephone line, an initiative Metzger previously instituted, successfully, in several other HUD offices. Although HUD advances nondiscriminatory reasons, which a jury could credit, for the supervisors' decisions regarding each of these initiatives, on a motion for summary judgment we must draw inferences in Metzger's favor. If Metzger's explanations of these incidents were credited, a reasonable jury could infer that racial animus toward Hispanics motivated Santos' and Stowell's failure to support these proposals.

Finally, although some of Metzger's specific performance deficiencies are not disputed, Metzger has produced some evidence, which a jury could credit, in support of the conclusion that he was performing adequately overall and that any performance deficiencies were not important ones, including: the positive performance appraisal; the praise from the Mayor of Spokane; the testimony from his secretary; the award recognizing his work on the Spanish Resource Guide; and the evaluation by a HUD employee that some of the alleged shortcomings in Metzger's performance were "petty," "trivial," and drew on "solicited comments."

Viewing this evidence cumulatively and drawing all reasonable inferences in Metzger's favor, we conclude that a reasonable jury could infer that the performance allegations were pretextual. Although Metz-ger's evidence of pretext may not be overwhelming, we realize that discrimination is "[an] elusive factual question," and that "any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a fact-finder." *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir.1995) (internal quotation marks and citations omitted). Therefore, we reverse the district court's grant of summary judgment on Metzger's color and national origin discrimination claims.

■ 3. For similar reasons, we reverse the district court's grant of summary judgment on Metzger's retaliation claim. To make out a *prima facie* case of retaliation, Metzger must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000). We agree with the district court that the timing of events— *e.g.* HUD's decision to demote Metzger within 7 months of his request for EEO counseling—established a *prima facie* case of retaliation. Unlike the district court, however, we have concluded that Metzger established evidence from which a fact-finder could infer pretext.

■ 4. HUD has conceded, for purposes of this summary judgment motion, that Metzger's demotion and reassignment to Anchorage, Alaska were adverse employment actions which affected a "term, condition, or privilege of employment." 42 U.S.C. § 2000e–2(a). We agree. Title VII "strike[s] at the entire spectrum of disparate treatment in employment." *Chuang,* 225 F.3d at 1125 (quoting *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)); *see also Ray,* 217 F.3d at 1241 n. 4 (stating, in the context of discussing a retaliation claim, that a lateral transfer could be

an adverse employment action). Because HUD has conceded an adverse employment action, summary judgment as to that issue is inappropriate, and we need not determine whether Santos' and Stowell's conduct was sufficiently severe to constitute a racial harassment claim independent of this demotion and transfer. A trial is now necessary to determine both (1) whether HUD's actions were motivated by racial animus, and (2) if so, the severity of the impact of those actions on Metzger, as it relates to damages and equitable relief.

■ We agree, however, with the district court's conclusion that Metzger's constructive discharge claim failed as a matter of law. Workplace conditions can be detrimental enough to constitute an adverse employment action without rising to the higher standard of "constructive discharge." *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir.2000). Metzger's transfer and demotion—without loss in pay—would not, as a matter of law, cause a reasonable person to resign. *See, e.g., King v. AC & R Advert.,* 65 F.3d 764, 768–9 (9th Cir.1995) (applying California law and stating that a "demotion, even when accompanied by a reduction in pay, does not by itself trigger a constructive discharge.") Nor has Metzger produced sufficient additional evidence of working conditions "so intolerable and discriminatory as to justify a reasonable employee's decision [to leave.]" *Brooks,* 229 F.3d at 930. (internal quotation marks and citation omitted).

5. For the reasons stated above, we *REVERSE* the grant of summary judgment on Metzger's color, national origin, and retaliation claims but *AFFIRM* the

grant of summary judgment on Metzger's constructive discharge theory.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.