GOULD, Circuit Judge,
dissenting.
A summary judgment rejected plaintiffs employment retaliation claim, and we decide if trial is needed to determine whether the termination of an employee who was an on-air personality at a radio station, as part of a format change and overhaul of the radio station, was in reality a pretext for retaliation for her prior complaint about asserted gender-based wage discrimination at the radio station. I conclude that no genuine issue of fact is presented on pretext in the context of the station’s undisputably broad changes of on-air personalities after a new owner took control after an acquisition.
Marathon Media, L.P. (“Marathon”), defendant-appellee, acquired a group of radio stations and promptly thereafter changed the format of the flagship radio station that it acquired, KORD, from modern country music to more traditional country music. Lynda Stegall, plaintiff-appellant, an on-air personality at KORD before the Marathon acquisition and during a transition period of about six weeks thereafter, was terminated when Marathon changed KORD’s format and did a station overhaul that included replacement of every daily on-air personality. Stegall brought suit contending that her employment was terminated in retaliation for gender-based wage discrimination complaints that she made during a meeting with Marathon’s new management of KORD shortly before the format change at KORD. Marathon, on the other hand, contends that Stegall was fired because of a broad station change of format and personalities and because of Stegall’s poor attitude during Marathon’s management of KORD. Because Marathon’s articulated reasons for terminating Stegall’s employment with KORD are legitimate, nondiscriminatory reasons, we must determine if genuine fact issues were presented whether Marathon’s articulated reasons were a pretext for an illegal employment action.
I
On November 9, 1999, Marathon Media bought five Pasco, Washington radio stations from Citadel Broadcasting, including KORD, a country music station that played recent country music hits. Marathon at first kept most employees at KORD, in order to maintain radio broadcasts at KORD. Lynda Stegall was one of the employees at first retained. She had been employed as an on-air personality at KORD since 1993. After Marathon acquired KORD, Marathon hired a new general manager (“GM”), Eric Van Winkle, to supervise KORD and other acquired stations. Van Winkle hired Paul Drake and Curt Cartier as co-program directors of KORD under Marathon. Drake and Cartier had been program directors at other of the acquired radio stations. Drake and Cartier then controlled KORD’s content and presentation.
Neither Van Winkle, Drake, nor Cartier supervised Stegall before Marathon’s acquisition of KORD. However, Stegall testified that Cartier treated her “very badly” after Stegall returned from a two week leave of absence that she took to protest *1022 wage discrimination at KORD, when KORD was under Citadel management. On December 6, 1999, after Marathon’s acquisition, Stegall told Drake, now her supervisor, about prior complaints she had made to Citadel complaining that she was paid less than on-air male personalities because of her gender.
Nine days later, on December 15, 1999, KORD fired Stegall and another woman announcer, Kristin Crume, because Van Winkle, Drake and Cartier, according to Stegall’s testimony, were planning “big changes” for KORD. When Stegall later applied for unemployment benefits, KORD said that “a business decision based on changing the programing and formatting,” led to Stegall’s termination.
After Stegall’s termination, Marathon management switched KORD from station-selected music to a computerized music service; brought in Leah Knight, a syndicated host from Seattle; changed the morning show; midday show; afternoon show; nighttime show and overnight show; did on-air promotions about the format changes; stressed a different and more traditional, less contemporary, type of country music broadcast; removed all the daily on-air personalities; and replaced seven announcers on five shifts including every morning show host. The only former daily on-air personality who remained at the station after the broad station change was Ed Dailey, removed from daily duties and given a four-hour Sunday morning “oldies” show. Later, during this litigation, Van Winkle and Drake testified that Stegall was also fired because they did not like parts of Stegall’s performance during their brief supervision of KORD and that this influenced their decision not to retain Stegall during the station overhaul.
On December 19, 2001, Stegall stipulated to dismissal of her sexual harassment and retaliation claims against Citadel, 16942 and to dismissal of her sexual harassment claims against Marathon. The district court gave Marathon summary judgment rejecting Stegall’s Title VII and state law claims of retaliation. The district court was correct and we should affirm.
II
Stegall argues that she was illegally terminated in retaliation for making wage discrimination complaints to Marathon about lower pay she was receiving because of her gender in violation of Title VII and the Washington Law against Discrimination (“WLAD”). Because Washington courts look to federal law when analyzing retaliation claims, we analyze Stegall’s Washington state law claims and federal claims together. See Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir.2002); Graves v. Dep’t of Game, 76 Wash.App. 705, 887 P.2d 424, 428 (1994).
Under § 704 of Title VII of the Civil Rights Act of 1964, it is unlawful “for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by[Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].” 42 U.S.C. § 2000e-3. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 269, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); see also Trent v. Valley Electric Association, Inc., 41 F.3d 524, 526 (9th Cir.1994) (“Courts have interpreted ‘unlawful employment practices’ to include a panoply of actions involving discrimination and sexual harassment.”). Because the district court granted summary judgment to Marathon we review Stegall’s claims de novo. Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002). In doing so, we *1023 view all evidence in the light most favorable to Stegall and determine whether there are any genuine issues of material fact precluding summary judgment. Id.
To prevail on a retaliation claim brought under Title VII, Stegall must first establish a prima facie case of illegal retaliation by showing that (1) she was engaging in a protected activity; (2) she suffered an adverse employment decision; and; (3) a causal link exists between her activity and the employment decision. Trent, 41 F.3d at 526; see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In an appropriate case, “[t]he causal link may be established by an inference derived from circumstantial evidence.” Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir.1988). If Stegall establishes a prima facie case of illegal retaliation, the burden of production shifts to Marathon to articulate a legitimate nondiscriminatory reason for terminating Stegall’s employment. Wrighten v. Metro. Hosps. Inc., 726 F.2d 1346, 1354(9th Cir. 1984). If Marathon gives such a reason, the burden of production shifts to Stegall to prove that Marathon’s articulated reason is a pretext for illegal retaliation, with pretext shown “either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.” Texas Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980) (citation omitted). If Stegall satisfies her burden of producing evidence that Marathon’s reasons are pre-textual, summary judgment is inappropriate and a jury is entitled to infer that the motive for Marathon’s employment action was retaliatory. Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
A
Because Marathon does not question that Stegall has established a prima facie case of retaliation, I begin analysis by looking at Marathon’s actions and testimony to determine whether Marathon has satisfied its burden, of production, to articulate a legitimate, nondiscriminatory reason for terminating Stegall’s employment. Despite Stegall’s argument that Marathon’s reasons are not legitimate, the reasons extended by Marathon, if asserted in good faith and not as a pretext, are legitimate business interests sufficient to support the termination of an employee.
Marathon offers two reasons for terminating Stegall’s employment. First, Marathon states that it terminated Stegall’s employment because of its decision to overhaul the programming of KORD from a modern country station that played the latest country hits to a more traditional country music radio station that played older country songs. Second, Marathon states that it terminated Stegall because of a perception among Marathon management that Stegall did not place a priority on maintaining strong working relationships and thus displayed a poor attitude toward her job and her co-workers. The reasons articulated by Marathon satisfy Marathon’s burden of production to articulate legitimate nondiscriminatory reasons for terminating Stegall’s employment. See Aragon v. Republic Silver State Disposal, 292 F.3d 654, 661 (9th Cir.2002).
B
Because Marathon has articulated legitimate, nondiscriminatory reasons for terminating Stegall, the burden shifts back to Stegall to prove that Marathon’s articulated reasons are a pretext for illegal retaliation by “either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly *1024 by showing that the employer’s proffered explanation is unworthy of credence.” Texas Dep’t of Cmty. Affairs, 450 U.S. at 256, 101 S.Ct. 1089 (1980).
First, Stegall argues that we should infer pretext because the timing of Marathon’s decision to terminate her occurred shortly after she made a wage complaint to Marathon management. Although Stegall previously made gender-based wage discrimination complaints to Citadel management at KORD, she renewed her gender-based wage discrimination complaints to Drake, her immediate supervisor under Marathon management of KORD, on December 6, 1999, and was fired 9 days later on December 15, 1999. Stegall argues that the timing of Marathon’s decision to fire her after her wage discrimination complaint to Marathon management shows pretext because her performance at KORD was good and because one of the persons responsible for deciding to fire her, Curt Cartier, was upset that Stegall took a two week leave of absence to protest wage discrimination while KORD was under Citadel ownership.
As for her first point, timing of a termination can be significant, and with other evidence of pretext in an appropriate case may be persuasive to show pretext. In Little v. Windermere Relocation, Inc., we stated that evidence of pretext was shown from the timing of the employer’s decision to fire the employee because the employee was fired “within minutes” of her complaint, because the employee had a documented record of superior performance, and because the employee’s supervisor was suspiciously uninvolved in the employer’s decision to terminate the plaintiff. 301 F.Bd 958 (9th Cir.2002). Stegall’s case against Marathon as to significance of timing to show pretext is nothing like the case presented by the terminated employee in Little. Unlike the employee in Little, Ste-gall has presented no substantial evidence that the timing of her termination provides evidence of Marathon’s pretext. Marathon terminated Stegall about six weeks after it purchased KORD from Citadel, whereas in Little the plaintiffs termination occurred minutes after the employee’s complaint about a rape by a customer. Further, while the employee’s termination in Little stood alone, within weeks of Stegall’s termination, Marathon replaced every daily on-air personality at KORD with new talent in an effort to increase KORD’s ratings. As Drake testified:
I wanted to make changes. And I think Eric [Van Winkle] described wholesale changes. KORD was hurting financially. It was not billing what it should. We wanted to make a splash.... We changed the morning show. We changed the midday. We changed the afternoon. We changed the nighttime show. We changed the overnight show. We changed the music. We made complete changes around the clock.
Further, the supervisor of the employee in Little was not consulted about the termination, whereas here Stegall’s direct supervisor, Drake, was involved in the decision to terminate Stegall’s employment. And Stegall has not presented any evidence that Cartier knew of any of Stegall’s prior complaints to Citadel or that he knew that Stegall was making complaints about gender-based wage discrimination.[1]
*1025 That Stegall’s employment was terminated nine days after making a gender-based wage discrimination complaint, in the context of undisputed facts presented including the wholesale changes at the station, does not raise any genuine issue of fact on pretext by the employer. Although Marathon’s decision to fire Stegall was not remote to her wage discrimination complaint to Marathon management, there was insufficient evidence of pretext based on the timing of Marathon’s decision because the timing of Marathon’s decision to fire Stegall is incontestably supported by its articulated reason of instituting a broad overhaul of KORD.
Second, Stegall argues that Marathon’s two reasons for terminating her — the need to conduct a broad format change and her poor attitude — are shifting and inconsistent reasons which provide evidence of pretext. Stegall also argues that Marathon’s second articulated reason for laying her off, her poor work attitude, supports a finding of pretext since Marathon did not articulate this reason until the commencement of litigation. It is correct that “fundamentally different justifications for an employer’s action ... give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason.” Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir.1994). But different justifications for an adverse employment action will not defeat summary judgment if those reasons are “not incompatible.” See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir.1996). See also Aragon, 292 F.3d at 661 (“We do not infer pretext from the simple fact that [an employer] has two different, although consistent, reasons for laying off [an employee.]”).
I conclude that Marathon’s reasons for terminating Stegall are not inconsistent and do not support a showing of pretext. That Stegall’s work attitude was perceived by Marathon to be poor is not inconsistent with Marathon’s articulated reason that it fired Stegall to effect a broader station overhaul. The articulated reason of Ste-gall’s poor attitude supports Marathon’s decision not to retain Stegall during the overhaul that replaced every daily on-air personality at KORD. Also, as we have previously held, that an employer has given an explanation not previously stated until after the commencement of litigation does not by itself create sufficient evidence of pretext. See Lindahl v. Air France, 930 F.2d 1434, 1438(9th Cir.1991) (“Simply because an explanation comes after the beginning of litigation does not make it inherently incredible.”). See also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1286 (9th Cir.2000) (holding that employer’s reasons for termination which “mainly detailed] the earlier one [it gave],” was not sufficient evidence of pretext).
Third, Stegall argues that one of the underlying reasons for Marathon’s termination of Stegall — the broad station overhaul of KORD — is not worthy of credence. Stegall argues in support of this position *1026 that a change in “the programming and format” of a radio station is common in radio and that a change in format does not usually require a change of on-air personalities. Stegall also asserts that the “overhaul” claimed by Marathon involved nothing more than routine changes. But even if some format changes of radio stations are done without personnel changes, that cannot be said to render illegitimate a radio station’s new management’s business objective if it prefers to have fresh faces and talent to advance its chosen format.
Marathon’s reason that it was overhauling KORD is supported by its actions during and after Stegall’s termination: Although some on-air personalities were transferred to other stations, some resigned, and others were terminated, Marathon did replace every daily on-air personality, not merely Stegall, soon after Marathon bought KORD. KORD under Marathon moved from having a station-selected music format to a computer-automated music selection, a system that reduced KORD’s reliance on its employee announcers to select music. KORD changed its station format from modern country to older country music. These changes of personnel, operation, and program format at KORD strongly support Marathon’s articulated reason that it conducted a broad station overhaul of KORD and on the undisputed evidence foreclose Stegall’s assertion of pretext.
Ill
Stegall submitted insufficient evidence that Marathon’s articulated legitimate, nondiscriminatory reasons for terminating her were a pretext for illegal retaliation to avoid a summary judgment based on Marathon’s legitimate reasons for termination. I would affirm the district court’s grant of summary judgment to Marathon Media on Stegall’s illegal retaliation claims under Title VII and Washington Law. Accordingly, I must respectfully dissent.[2]

. The majority also relies on Bell v. Clackamas County, 341 F.3d 858 (9th Cir.2003), holding in that case that temporal proximity between protected activity and adverse employment action might be sufficient circumstantial evidence of retaliation. Bell adds nothing to analysis based on Little, for in Bell, as in Little, an adverse employment action, in the case of Bell it was negative performance reviews, "immediately followed plaintiff's complaint” in the majority's words. The majority also cites Yartzoff v. Thomas, 809 F.2d *1025 1371, 1376 (9th Cir.1987), which the majority contends found "highly probative'' timing between employee complaint and adverse action that "far exceeded” the 9 day interval between Stegall’s complaint and her termination. Although Yartzoff held that the negative performance ratings in that case coming three weeks after protected activity of Yart-zoff’s complaints was sufficient to establish a prima facie case on causation, each case turns on its facts and the majority here ignores the undisputed evidence proving that Stegall's termination was part of a broader set of terminations incidental to a new ownership's desire to change programming and on-air personalities. That all on-air announcers were terminated from their full-time positions precludes the negative inference that the majority draws under a rational interpretation of the evidence.

. Apart from my disagreement with the majority’s pretext assessment, I also regret to say that the majority’s analysis distorts and misunderstands our law. First, though circumstantial evidence was approved by the Supreme Court in Desert Palace, Inc. v. Costa, -U.S.-, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), as a way to show mixed motive, rejecting the prior view of many circuits that direct evidence was required for a mixed motive jury instruction, that has nothing to do with this case which deals with the traditional and long-established assessment of the three-part test required by the Supreme Court's McDonnell Douglas precedent to assess whether a summary judgment may be given in a Title VII case. It has always been the law, in our circuit and elsewhere, that circumstantial evidence is admissible and can be considered on the issues of whether a prima facie case has been made, whether the employer has shown legitimate reasons for a termination, and whether the reasons given are pretextual. Nothing is new in that regard. I fully accept that Stegall can argue circumstantial evidence. It is simply not sufficient in the context of the station’s broad change of program and personalities after an acquisition and the entry of new management.
Second, the majority appears to be "tutoring" Stegall’s counsel to attempt to present this case as a mixed motive case, when the majority asserts of mixed motive cases that "Stegall's case is arguably one.” This case however was dismissed on summary judgment. No issue was presented about any request for a mixed motive jury instruction, which was premature. The majority’s dicta about mixed motive cases properly has nothing to do with analysis of whether the record before the court when it granted summary judgment showed a genuine issue of fact on pretext.
Third, the majority makes much of Stegall’s problems with Cartier which occurred long *1027 before the change of management. No genuine dispute on pretext of the termination as part of broad station change is shown by Cartier’s dissatisfaction expressed when Ste-gall previously walked off the job.