Devielle JOHNSON, Plaintiff—
Appellant,

v.

BOYS AND GIRLS CLUBS OF
SOUTH PUGET SOUND,
Defendant—Appellee.

No. 04–35959.
D.C. No. CV–03–05386–RBL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2006.

Decided July 6, 2006.

Richard H. Wooster, Esq., Mann & Johnson, Tacoma, WA, for Plaintiff–Appellant.

Jerret E. Sale, Esq., Shawn M. Yates, Esq., Deborah L. Carstens, Gretchen Herbison, Esq., Bullivant Houser Bailey, PC, Seattle, WA, for Defendant–Appellee.

Appeal from the United States District Court for the Western District of Washington, Ronald B. Leighton, District Judge, Presiding.

Before FERGUSON, CALLAHAN, Circuit Judges, and BOLTON, District Judge.[*]

### MEMORANDUM [**]

Appellant Devielle Johnson, an African–American, sued his former employer The Boys & Girls Club of South Puget Sound ("the Club") under Washington law RCW 49.60 et seq., 42 U.S.C. § 1981, and 42 U.S .C. § 2000e et seq. (Title VII), alleging race discrimination, wrongful termination and retaliation.[1] He also alleged

---

[*] The Honorable Susan R. Bolton, United States District Judge, United States District Court, District of Arizona, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

[1.] Since the parties are familiar with the facts, we recount them only as necessary to explain our decision.

wrongful termination based on breach of employment contract, claiming that the Club breached its promise to provide progressive discipline as stated in its employee handbook. The district court granted summary judgment in favor of the Club on all causes of action and Johnson challenges that ruling.

■ We review de novo the district court's grant of summary judgment. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). We must determine, viewing the evidence in the light most favorable to Johnson, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). We affirm in part, and reverse and remand in part.

A. Discrimination—Failure to Promote

■ Pursuant to the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Johnson bears the initial burden of asserting a prima facie case of failure to promote by establishing that: (1) he belongs to a protected class; (2) he applied for and was qualified for the position he was denied; (3) he was rejected despite his qualifications; and (4) the Club filled the position with an employee not of Johnson's class, or continued to consider other applicants whose qualifications were comparable to Johnson's after rejecting him. *Id.*

If Johnson can establish a prima facie case of discrimination, a rebuttable presumption shifts the burden of production to the Club to articulate some legitimate, nondiscriminatory reason for its decisions. *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817. If the Club meets this burden, the rebuttable presumption of discrimination disappears, and the burden shifts back to Johnson to prove that the Club's stated reason is merely pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Johnson claims that the Club discriminated against him when it hired Mark Cramer, a non-African-American, into the Director of Technology position instead of promoting Johnson. This argument fails because Johnson cannot demonstrate that he was qualified for the job. The record establishes that the skills and knowledge required for the Director of Technology position included "[t]hree to five years of progressively responsible experience in information systems management, including Local Area Network administration and wide area networking" and "demonstrated success in providing user support services and delivering user training." Johnson did not have the requisite experience for this position—indeed, he was still enrolled in Clover Park Technical Institute when Cramer was hired. Moreover, Johnson did not refute John Franich's testimony that Cramer "had an extensive multimedia background." Thus, there was undisputed evidence that Cramer was more qualified than Johnson.

B. Discrimination—Wrongful Termination

■ Johnson also claims that the Club's decision to terminate and replace him as BOTT Lab Manager with a Caucasian (Wilhelm) instead of a qualified African-American candidate (Perry) was racially motivated. To establish a prima facie case of wrongful termination under Title VII, Johnson must demonstrate that: (1) he was a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the protected class were treated more

favorably. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir.2002).

 Johnson offered his own testimony to establish that he was performing his job in a satisfactory manner,[2] and the record establishes that Wilhelm and Perry were similarly qualified.[3] Accordingly, Johnson established a prima facie case of wrongful termination.

 In turn, the Club met its burden by articulating a legitimate, non-discriminatory reason for its decision to terminate Johnson. Gene Anderson, Rick Guild, and Franich all stated that Johnson's schedule was unpredictable, and that he missed meetings and training sessions, failed to relinquish his duties as athletic director despite being told to do so, did not spend enough time in the Lab instructing the children, and failed to develop and introduce appropriate curricula. Additionally, Johnson's subordinates complained that he was not accessible, and parents complained about the BOTT Lab program under Johnson's leadership. Finally, Anderson stated that Johnson's performance did not improve, despite several counseling sessions.

 Johnson claims that the Club's reasons for terminating him were a pretext for intentional discrimination because: (1) he performed his job well; (2) the Club attempted to "build a record" against him by fabricating the September 20, 2002 and October 16, 2002 memoranda after he was terminated; and, (3) Anderson had a history of treating African–Americans less favorably.

The Club counters that there can be no inference of pretext where, as here, the same actor hires and fires a discrimination plaintiff within a short period of time, citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir.1996). *Bradley* is unavailing, however, because there, the plaintiff adduced no meaningful evidence that her supervisor harbored discriminatory animus. *Id.* at 270. By contrast, Johnson produced the following evidence of discriminatory animus: (1) Emily Schroeder's testimony that Anderson tended to ask Johnson to address discipline problems with African–American children rather than handle them himself; (2) Anderson's undisputed comments on three occasions that he did not understand Johnson's (African–American) culture; and, (3) the Club's choice of a Caucasian (Wilhelm) over a qualified African–American (Perry) to replace Johnson as BOTT Lab manager.

In light of Anderson's undisputed comments and open discomfort with African–American culture, his termination of Johnson and selection of Wilhelm over Perry raises a triable issue of fact on the question of pretext. Accordingly, we reverse the district court's grant of summary judgment on Johnson's Title VII wrongful termination claim, and remand for further proceedings.

## C. Retaliation

 Johnson claims that the Club terminated him in retaliation for reporting Anderson's alleged "racially inappropriate behavior" to superiors. In order to establish a prima facie case of retaliation, John-

---

**2.** Self-assessment testimony regarding job performance may be sufficient to establish a prima facie case; although, it is insufficient, without more, to create a triable issue of fact on the question of pretext. *Aragon*, 292 F.3d at 660.

**3.** Having reviewed the qualifications of Mr. Wilhelm and Mr. Perry, and granting all reasonable inferences in favor of Johnson, we find that a reasonable trier of fact could conclude that Wilhelm and Perry were similarly qualified despite certain differences in their education and experience.

son must show that: (1) he engaged in a protected activity; (2) the Club subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994). If he can assert a prima facie claim, the burden shifts to the Club to articulate a legitimate, non-retaliatory reason for its decision. *Id.* at 1464–65. If the Club meets its burden, Johnson bears the ultimate burden of demonstrating that the reason given was merely a pretext for impermissible retaliation. *Id.*

▮ Johnson failed to establish a prima facie case because he did not show a causal link between his protected activity and his termination. Even if he could establish a causal link, his claim fails because there was no evidence of pretext.

Johnson testified that in March 2001, he telephoned his supervisor, Todd Bale, and reported the photograph incident,[4] and that he left a voice mail message for Guild indicating that "there was a situation that happened at the branch that I'm sure he would hear about. And I told him who was involved." Johnson was not terminated, however, until January 2003. Assuming without deciding, that this was protected activity, the 20–month break between Johnson's protected activity and his termination will not support an inference of causal connection. *See Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir.2002) (finding that 18–month lapse was too long to create an inference of causation); *Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir.2003) (holding

that nine months was not sufficiently close to establish a causal link).

Johnson's retaliation claim also fails because he did not establish pretext. The record is devoid of any suggestion that Anderson, Franich or Guild were motivated to terminate Johnson because he told Todd Bale about the basketball incident in March 2001, or because he left a relatively vague voice mail message for Guild about the incident.

**D. Wrongful Termination Based on Breach of Employment Contract**

▮ Under Washington law, employment of an indefinite duration is at-will, meaning the employer may terminate the employee any time, with or without cause. *Bulman v. Safeway, Inc.*, 144 Wash.2d 335, 27 P.3d 1172, 1174 (2001). Employers and employees may contractually modify the relationship, however, in three ways: (1) by express agreement; (2) by implied contract based on the conduct of the parties; and (3) through the creation of an equitable claim "where the employer makes promises of specific treatment in specific situations, thus precluding the enforcement of the at-will aspect of the employment agreement." *Kuest v. Regent Assisted Living*, 111 Wash.App. 36, 43 P.3d 23, 29 (2002).

Johnson argues that the third method applies to this case. He contends that the Club failed to comply with Section VI (Unsatisfactory Performance) of its employee handbook, which allegedly promises to provide progressive discipline to employees before terminating them.

---

4. The "photograph incident" occurred at a basketball game during which Anderson was observed taking a digital photograph of a boisterous African–American parent cheering for the opponent team. Shortly thereafter, Anderson commented to Emily Schroeder, "I

don't understand their people." The following day, Anderson distributed the photograph by e-mail to the Gonyea staff, with a comment to the effect of, "This isn't what we are about."

The Washington Supreme Court has ruled that an employee seeking to enforce the terms of an employee handbook must prove:

(1) whether any statements therein amounted to promises of specific treatment in specific situations; (2) if so, whether the employee justifiably relied on any of these promises; and finally, (3) whether any promises of specific treatment were breached.

*Bulman,* 27 P.3d at 1175. Johnson failed to establish the first and third elements.

The Club's employee handbook included conspicuous disclaimers in the sections entitled "Introduction" and "Employment/Termination of Staff," stating that employment is entirely at-will and that "[u]nder no circumstances will [the handbook] or any statement contained [t]herein constitute or create a contract for duration of employment." In doing so, the Club disclaimed any perceived binding effect of statements made in its employee handbook. *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984). Additionally, Johnson confirmed his understanding that his employment was at-will and acknowledged in writing that he had received and read the employee handbook, as well as periodic changes thereto. Moreover, when he accepted the position as BOTT Lab Manager, Johnson signed an offer letter that reaffirmed his at-will status. Thus, even if a promise of progressive discipline could be inferred from Section VI, such promise was adequately disclaimed throughout the handbook and in Johnson's offer letter. *Id.*

In any event, Johnson's breach of employment contract claim also fails because there is no inference of breach on this record. Johnson does not dispute that Anderson spoke to him about performance issues in October 2002, or that he received a copy of the memo dated December 3, 2002, which sets forth specific performance problems and requests that Johnson relinquish his duties as athletic director. Additionally, the record established that Anderson sent Johnson a follow-up e-mail on December 10, 2002, again requesting that he allow the new athletic director to perform his job and explaining that Johnson needed to be more "hands on" in the BOTT Lab. The record indicates that on January 13, 2003, Johnson was terminated because his performance did not improve. Accordingly, the Club substantially complied with its obligations under Section VI of its employee handbook.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment as to Johnson's claims of failure to promote and retaliation under Title VII; wrongful termination based on breach of employment contract; and discrimination under 42 U.S.C. § 1981. The district court's grant of summary judgment as to Johnson's wrongful termination claim under Title VII, however, is REVERSED and REMANDED for further proceedings consistent with this decision. Each party shall bear their own costs on appeal.